UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:23-cr-00048-JAW-1 |
| | ) | |
| ALEXIS HODGES | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

A criminal defendant who has been convicted and sentenced but has not yet begun her term of incarceration moves for compassionate release on the ground that she is the sole caregiver for two children with serious medical conditions. She also moves to seal the medical records and proposed release plan she attaches in support of her motion and for appointment of counsel. The court dismisses the defendant's motion for compassionate release, concluding she cannot bring her motion until she has begun her custodial sentence and exhausted her administrative remedies. The court further grants in part and denies in part her motion to seal, concluding the children's privacy rights overcome the public right of access to judicial records with regard to their medical records, but that the motion itself and the proposed release plan should be unsealed. Finally, concluding the defendant has not demonstrated a likelihood of success on the merits or presented a factually difficult or complex case, the court dismisses the defendant's motion for appointment of counsel.

## I.    INTRODUCTION

### A.    Procedural Background

On May 24, 2023, a federal grand jury indicted Alexis Hodges on eleven counts of wire fraud in violation of 18 U.S.C. § 1343. *Indictment* (ECF No. 3). After moving

without opposition to amend the indictment for a clerical error and being granted permission by the Court to do so, the United States (the Government) filed an amended indictment on May 8, 2024, again charging Ms. Hodges with eleven counts of wire fraud. *Unopposed Mot. to Amend Indictment to Correct Clerical Error* (ECF No. 46); *Order* (ECF No. 48); *Am. Indictment* (ECF No. 49). The next day, the Government filed a corrected indictment, fixing another clerical error to further clarify the Government's intent to proceed with eleven charges of wire fraud against Ms. Hodges. *Am. Indictment* (ECF No. 51). Ms. Hodges pleaded guilty as to all eleven counts on June 28, 2024. *Min. Entry* (ECF No. 61).

On January 23, 2025, Ms. Hodges was sentenced to twelve months and one day of incarceration on all eleven counts, to be served concurrently; three years of supervised release on all eleven counts, to be served concurrently; a cumulative $1,100 special assessment; and restitution in the amount of $73,291.33. *Min. Entry* (ECF No. 83); *J.* (ECF No. 85). Ms. Hodges was ordered to surrender for service of her term of incarceration before 2:00 p.m. on March 26, 2025. *Min. Entry*; *J.* at 2.

### B.    Motion for Compassionate Release and the Government's Response

#### 1.    Ms. Hodges's Motion

On March 19, 2025, before beginning her sentence of incarceration, Ms. Hodges moved for compassionate release on an expedited basis, contending that she "is the sole care[]giver of her kids who both have life threatening medical conditions" and that she "herself has just undergone surgery for a medical condition that warrants a noncustodial sentence." *Notice of Mot.* at 1-2 (ECF No. 88) (*Def.'s Mot.*). She "declares

that the situation with the care of her children is a unique situation" because her income is essential to her children's medical care and her employment provides medical insurance to cover expenses for treatment and medications, adding that she does not pose a threat to the community, that she has learned her lesson, and that she is remorseful for her criminal conduct. *Id.* at 2-3. Citing 18 U.S.C. § 3582(c)(1)(A) and Section 1B1.13 of the United States Sentencing Guidelines (U.S.S.G.), Ms. Hodges argues her family circumstances as the sole caretaker for her minor children constitute an extraordinary and compelling reason to grant her release under the terms of that statute. *Id.* at 4. She points out that a district court has broad discretion to determine what constitutes an extraordinary and compelling reason, *id.* at 5 (citing *United States v. Saccoccia*, 10 F.4th 1 (1st Cir. 2021)), and asks the Court to grant her requested release to a noncustodial sentence to "ensur[e] the well-being of the defendant's children while maintaining the integrity of the judicial process." *Id.* She asserts further that the 18 U.S.C. § 3553(a) factors weigh in favor of her early release. *Id.* at 2-3.

Turning to the timing of her motion, Ms. Hodges contends that "she can file a motion for compassionate release before starting her sentence" by demonstrating an extraordinary and compelling reason. *Id.* at 6 (citing *United States v. Dublin*, No. 18-102-JJM-LDA, 2020 U.S. Dist. LEXIS 151443 (D.R.I. Aug. 19, 2020) (citation corrected); *United States v. Canales-Ramos*, 19 F.4th 561 (1st Cir. 2021) (citation corrected); *United States v. Sepulveda*, 34 F.4th 71 (1st Cir. 2022) (citation corrected)). She adds that the Court must determine her sentence in light of the §

3

3553(a) factors, which she submits "as newly discovered evidence that would warrant entertaining and granting relief." *Id.*

In support of her motion, Ms. Hodges submits medical records evidencing her children's conditions and a proposed release plan, further requesting these records be filed under seal. *Med. Recs. and Additional Med. Info.* at 1 (ECF No. 89) (*Mots. to Seal & Appoint Counsel*). In this filing, the Defendant concedes she did not submit her request for compassionate release to the Warden of her federal correctional institution and requests an expedited proceeding on her motion so that she may be heard before the date of her self-surrender.[1] *Id.* at 6. Ms. Hodges further requests counsel be appointed to assist with her request. *Id.* at 7.

## 2.    The Government's Opposition

On March 21, 2025, the Government responded to Ms. Hodges's motion, opposing her requested relief on several grounds. *Gov't's Resp. in Opp'n to Mot. for Compassionate Release* (ECF No. 91) (*Gov't's Opp'n*). First, the Government contends she is not eligible for compassionate release because she has not yet begun her term of incarceration. *Id.* at 2 (citing *United States v. Fower*, 30 F.4th 823, 825 (9th Cir. 2022)). Second, the Government argues Ms. Hodges has failed to demonstrate that she exhausted her administrative remedies within the Bureau of Prisons (BOP) prior to filing her motion with the Court, as required by 18 U.S.C. § 3582(c)(1)(A). *Id.* at 3

---

[1]    The text of Ms. Hodges's filing is cut off by the page margins and thus the Court does its level best to fairly characterize her requests based on what is visible and may be reasonably inferred from context. *See Gakuba v. Frey*, Nos. 23-1084, 23-1095, 2024 U.S. App. LEXIS 18703, at *1 (1st Cir. Apr. 10, 2024) ("We review [the plaintiff's] pro se papers liberally") (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

(citing *United States v. Quirós-Morales*, 83 F.4th 79, 84 (1st Cir. 2023)).  Third, addressing, in the alternative, the merits of Ms. Hodges's motion, the Government argues that she has failed to establish an extraordinary and compelling reason for her release and that the Court considered her family circumstances and caretaking responsibilities for her minor children at sentencing.  *Id.* at 3-4 (citing *Tr. of Proceedings* at 9-23, 30-33, 35-45, 48, 52, 68 (ECF No. 90) (*Sent'g Tr.*).  The Government points out the Court specifically explained why the 18 U.S.C. § 3553(a) factors weighed in favor of a custodial sentence and urges the Court to decline to revisit its originally imposed custodial sentence.  *Id.* at 4.

The Court understands Ms. Hodges's presently pending motions as requesting the Court to order three distinct forms of relief: 1) for her attached medical records and proposed release plan to be sealed, 2) for compassionate release from her future term of incarceration, and 3) for appointment of counsel.[2]

## II.    MOTION TO SEAL

### A.    Legal Standard

In the landmark First Circuit case *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), the First Circuit defined "judicial records" as "materials on which a court relies in determining the litigants' substantive rights" and held that documents determined to be judicial records are presumptively subject to the common law right

---

[2]    Under District of Maine Local Rule 7(c), Ms. Hodges would technically have the right to file a reply to the United States' response to her motion.  *See* D. ME. LOC. R. 7(c).  However, Ms. Hodges's reply would not be due until April 4, 2025, after March 26, 2025, the date she is required to report to federal prison.  The Court has issued this order on an expedited basis without waiting for Ms. Hodges's reply since she has requested expedited relief and deserves an expedited answer from the Court.

of public access. *Id.* at 56. The *Kravetz* Court continued to specifically consider the right to public access of medical and personal information of third parties.

With regard to medical information, the First Circuit acknowledged that "[m]edical information is . . . 'universally presumed to be private, not public.'" *Id.* (quoting *United States v. Connolly (In re Boston Herald)*, 321 F.3d 174, 190 (1st Cir. 2003)). However, the *Kravetz* Court continued that this determination "does not end the matter," *id.*, because "[t]he privacy interest in medical information is 'neither fundamental nor absolute,'" *id.* (quoting *United States v. Sattar*, 471 F. Supp. 2d 380, 387 (S.D.N.Y. 2006)), and it "can be waived or otherwise overcome by a variety of means." *Id.* (citing *Crawford v. Manion*, 96 Civ. 1236 (MBM), 1997 U.S. Dist. LEXIS 4237, at *4-6 (S.D.N.Y. Mar. 28, 1997)). *Id.*

In *Kravetz*, as here, the defendants "voluntarily submitted [the medical information] to the court in an attempt to mitigate their sentences." *Id.* The First Circuit in that case noted that "medical documentation . . . may contain information beyond . . . diagnosis and treatment information that is likely to form the basis of a plea for or grant of leniency," and distinguished medical information that is "peripheral" and would only serve to "gratify public spite or promote public scandal" from information that is "necessary to the public's appreciation of the sentence imposed." *Id.* Discussing the privacy implications of medical records, the First Circuit specifically referred to documents including "the details of a person's family history, genetic testing, history of diseases and treatments, history of drug use, sexual orientation and practices, and testing for sexually transmitted diseases." *Id.* (quoting

6

U.S. Congress, Office of Technology Assessment, Protecting Privacy in Computerized Med. Info., OTA-TCT-576 (Sept. 1993)).

The First Circuit held that the "[p]rivacy rights of . . . third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." *Kravetz*, 706 F.3d at 62 (quoting *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 411 (1st Cir. 1987)). "[C]ourts should 'consider the degree to which the subject matter is traditionally considered private rather than public,'" noting that "family affairs, illnesses, [and] embarrassing conduct with no public ramifications . . . will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)). In *Kravetz*, the First Circuit contemplated the propriety of sealing letters discussing, inter alia, the ill health of family members, describing such information as "highly personal" and noting the information "appears to have no direct bearing upon the public's assessments of the sentences imposed." *Id.*

**B.    Discussion**

Ms. Hodges files three separate documents under seal: her motion to seal itself, her children's medical records, and her proposed release plan. *Mots. to Seal & Appoint Counsel; id.*, Attach. 1, *Attached Med. Docs.* at 1; *id.*, Attach. 2, *Proposed Release Plan* at 1. The Court considers each of these three filings in light of the First Circuit's holding in *Kravetz*.

**1.    The Motion to Seal (ECF No. 89)**

First, Ms. Hodges files a document titled "Medical Records and Additional Medical Information"; this filing is a template document that, among other things,

answers "yes" to the questions of whether Ms. Hodges requests the attachments to this document be filed under seal and whether she requests appointment of counsel. *Mots. to Seal & Appoint Counsel* at 1. Based on these answers, the Clerk of Court designated this filing as a motion to seal and for appointment of counsel.

On this Court's review, this document contains no medical or third-party personal information that implicates the privacy concerns discussed in *Kravetz*; rather, this template form largely checks boxes regarding the procedural background of Ms. Hodges's sentence and motion for compassionate release. *Id.* In one brief narrative answer, Ms. Hodges explains the basis of her request to seal, describing in generalities that her children require medical attention and that she is their caregiver. This high-level description does not "gratify public spite or promote public scandal", *Kravetz*, 706 F.3d at 56, and further bears directly on the Court's ruling on the motion to seal.

For these reasons, the Court sees no reason to seal Ms. Hodges's motion to seal and for appointment of counsel, and thus orders this filing unsealed.

### 2.    The Attached Medical Documents (ECF No. 89-1)

Turning to the medical records attached to Ms. Hodges's motion to seal and for appointment of counsel, the Court concludes the children's privacy rights implicated in these medical records warrant remaining sealed.

Pursuant to *Kravetz*, the medical records submitted by Ms. Hodges unequivocally constitute "judicial records," as she submits this information to aid the Court's adjudication of her motion for compassionate release. *Kravetz*, 706 F.3d at

8

56.    Nonetheless, *Kravetz* states clearly that medical information is "universally presumed to be private, not public." *Id.* at 63 (quoting *In re Boston Herald, Inc.*, 321 F.3d 174, 182 (1st Cir. 2003)).  Further, the medical records in question here belong, not to Ms. Hodges herself, but to third-party minors. "Third-party privacy interests, in particular, have been referred to as 'a venerable common law exception to the presumption of access,' and 'weigh heavily in a court's balancing equation.'" *Id.* at 62 (quoting *Amodeo*, 71 F.3d at 1051) (internal citation omitted).  In *Kravetz*, specifically considering letters containing information on the ill health of third parties, the First Circuit described such third-party medical information as "highly personal and appear[ing] to have no direct bearing upon the public's assessment of the sentences imposed." *Id.* at 62.  "Under these circumstances, the privacy interests implicated by disclosure may overcome the presumption of public access." *Id.*

Privacy interests are further exacerbated when, as here, the private medical information belongs to a minor.   Federal law and the caselaw of this District unequivocally recognize the enhanced privacy rights of minors.  *Cf.* FED. R. CRIM. P. 49.1(a)(3) (directing parties to refer to minors only by their initials in written submissions); *Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 U.S. Dist. LEXIS 13319, at *4 (D. Me. Jan. 25, 2021) (recognizing the "legitimate reasons [] to maintain [the plaintiffs'] privacy as minors and as recipients of certain medical treatment").  While redaction of personally identifiable information may be an adequate remedy in some circumstances, nearly every page of the attached medical records at issue here is replete with not only the children's names, but detailed medical histories,

treatment plans, and doctors' notes on conditions and their symptoms, such that redaction is not practical.

At bottom, the Court weighs the right of public access to judicial records against the privacy rights of third-party minors to their medical information and, on balance, concludes that permitting the medical records to remain indefinitely sealed to protect the children's privacy is the appropriate course.

### 3.    The Proposed Release Plan (ECF No. 89-2)

Ms. Hodges further requests permission to file her proposed release plan under seal, which she submits in support of her motion for compassionate release. *Proposed Release Plan* at 1. By bearing on the Court's adjudication of her substantive rights, the document qualifies as a "judicial record" and is thus presumptively public under *Kravetz. Kravetz*, 706 F.3d at 56.

On the Court's review, this document lacks any medical information or personal third-party information that would overcome the public right of access to judicial records; however, the proposed release plan does contain the address that Ms. Hodges asserts would be her primary residence upon her release. *Proposed Release Plan* at 2. Pursuant to the directive of Federal Rule of Criminal Procedure 49.1, a filing containing a party's home address should be redacted to display only "the city and state of the home address." FED. R. CRIM. P. 49.1(a). The Court thus denies Ms. Hodges's motion to seal her proposed release plan and orders her to file a redacted version of the same with the street address of her residence withheld. FED. R. CRIM. P. 49.1(e). The Court will hold in abeyance its unsealing order for two weeks to give

Ms. Hodges an opportunity to file a version of the proposed release plan, redacting the street address, but not the town and state, in the proposed release plan. If Ms. Hodges fails to file a redacted release plan within two weeks, the Court orders the Clerk to unseal the entire document, unredacted.

## III. MOTION FOR COMPASSIONATE RELEASE

### A. Legal Standard

In 18 U.S.C. § 3582(c)(1)(A), Congress plainly laid out the requirements for a defendant to file a motion for sentence reduction directly with the court, providing that a court may only modify a term of imprisonment where:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ..

*Id.*; *see also Quirós-Morales*, 83 F.4th at 84 ("a prisoner-initiated motion for compassionate release may be made only after the prisoner has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or after thirty days have elapsed from the relevant facility's receipt of such request").

As explained by the First Circuit, 18 U.S.C. § 3582(c)(1)(A) "carved out a narrow exception to the general rule that '[a] court may not modify a term of imprisonment once it has been imposed.'" *Quirós-Morales*, 83 F.4th at 84 (quoting *Saccoccia*, 10 F.4th at 3). The statute allows district courts to grant a request for sentence reduction if three conditions are met: "extraordinary and compelling reasons

warrant a sentence reduction, such a reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and consideration of the 18 U.S.C. § 3553(a) factors counsels in favor of a reduction." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

In 2023, the United States Sentencing Commission clarified the meaning of "extraordinary and compelling circumstances" within 18 U.S.C. § 3582(c)(1)(A) by promulgating Amendment 814. *See U.S. Sent'g Comm'n, Guidelines Manual*, App. C Supp., Amend. 814. The Sentencing Commission issued an accompanying policy statement providing further guidance on the six categories of extraordinary and compelling bases warranting a sentence reduction: the defendant's 1) "medical circumstances", 2) "age", and 3) "family circumstances"; 4) if the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) if the defendant received an "unusually long sentence." U.S.S.G. § 1B1.13(b).

In addition to extraordinary and compelling reasons, a defendant must demonstrate a grant of sentence reduction comports with the factors described in 18 U.S.C. § 3553(a). *Saccoccia*, 10 F.4th at 3. This statutory section provides that the Court must consider, inter alia:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

## B. Discussion

Prior to reaching the merits of Ms. Hodges's motion for compassionate release, the Court identifies two threshold issues that control her eligibility for her requested relief. First and foremost, while Ms. Hodges moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), she is not yet incarcerated; indeed, her term of incarceration is not due to begin until March 26, 2025. *Def.'s Mot.* at 2. Second, as Ms. Hodges admits, she did not raise her request for compassionate release first to the warden of her facility, nor could she have because she is not yet incarcerated. *See Mots. to Seal & Appoint Counsel* at 4 (answering "no" to the question of whether she had "personally submitted your request for compassionate release to the Warden of the institution where you are incarcerated?").

Turning to the first issue, whether a person who is not incarcerated may bring a motion for compassionate release, the statute provides that a "court may not modify a term of imprisonment once it has been imposed except" in limited circumstances prescribed by statute. 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances"). One recognized exception is found in the so-called compassionate release provision, which allows a court to "reduce the term of

13

imprisonment (and may impose a term of probation or supervised release . . . that does not exceed the unserved portion of the original term of imprisonment)" if, "after considering the factors set forth in [18 U.S.C. §] 3553(a)," the court finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

To the Court's knowledge, there is no First Circuit authority as to whether a non-incarcerated defendant may obtain compassionate release before beginning service of her sentence, and, therefore, the Court has consulted authority from other circuits. In *United States v. Fower*, 30 F.4th 823 (9th Cir. 2022), the Ninth Circuit Court of Appeals discussed the issue at length. Beginning with the text of 18 U.S.C. § 3582(c)(1)(A), the Ninth Circuit noted the statute authorizes courts to reduce a term of imprisonment so long as that reduction "does not exceed the *unserved portion of the original term of imprisonment*" and thus concluded the statute inherently presumes the defendant has commenced serving his or her term of incarceration. *Fower*, 30 F.4th at 826 (9th Cir.'s emphasis). The Ninth Circuit also found persuasive the Supreme Court's analysis of 18 U.S.C. § 3582(c)(2), the statutory companion to 18 U.S.C. § 3582(c)(1)(A), in *Dillon*, *supra*, in which the Supreme Court held "that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 826; *Fower*, 30 F.4th at 826. Applying *Dillon*, the Ninth Circuit concluded that the defendant's requested relief of an order reducing his sentence to home confinement or time served

14

was "more akin to a plenary resentencing proceeding" than compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), and thus beyond the intended scope of the statute. *Fower*, 30 F.4th at 826.

The Ninth Circuit also discussed the legislative history of 18 U.S.C. § 3582(c)(1)(A), tracing its origins to the Sentencing Reform Act of 1984 and subsequent amendment through the First Step Act of 2018. *Id.* at 826-27. The *Fower* Court concluded that the original structure of the Sentencing Reform Act contemplated motions for compassionate release being initiated only by the Director of the BOP and that the First Step Act, though providing defendants with an additional recourse, did not change the statutory structure to eliminate the primary role of the BOP nor to grant the BOP jurisdiction over defendants who had not yet begun their incarceration. *Id.* at 827. "To permit it to now do so would be a marked departure from the limited, although significant, broadening of the First Step Act." *Id.*

By consensus, federal courts have concluded that, absent incarceration, a defendant cannot request "release," often framing the procedural deficiency in parallel to a failure to administratively exhaust. *See, e.g.*, *United States v. Pinheiro*, No. 21-50308, 2023 U.S. App. LEXIS 15992, at *2 (9th Cir. June 26, 2023) (concluding that § 3582(c)(1)(A) does not permit the modification of a completed sentence); *United States v. Konny*, 463 F. Supp. 3d 402, 404 (S.D.N.Y. 2020) (holding that based on the "plain terms" of statute, only defendants who have begun serving their term of imprisonment at a BOP facility are eligible for compassionate release); *accord United States v. Altschul*, No. 1:03-cr-19, 2024 U.S. Dist. LEXIS 198700, at *3-4 (E.D. Tx.

15

Oct. 31, 2024) ("[A]ny request for compassionate release is premature" because the defendant had yet to serve his federal sentence); *United States v. Verasawmi*, No. 17-254, 2021 U.S. Dist. LEXIS 116481, at *6 (D.N.J. June 22, 2021) (A defendant "must begin serving her sentence before the Court may resolve her motion for compassionate release on the merits"); *United States v. Staggs*, No. 3:18-cr-375-SI, 2020 U.S. Dist. LEXIS 240756, at *6 (D. Or. Dec. 22, 2020) (denying motion for compassionate release filed before custodial sentence began); *United States v. Picardo*, Crim. No. 19-401 (SRC), 2020 U.S. Dist. LEXIS 206970, at *5-6 (D.N.J. Nov. 5, 2020) (same); *United States v. Spruill*, Crim. No. 18-22, 2020 U.S. Dist. LEXIS 77900, at *9 (D. Conn. May 4, 2020) (same).

This Court finds highly persuasive the Ninth Circuit's statutory interpretation and declines to depart from the robust body of caselaw from other federal courts concluding a defendant must have begun a custodial sentence and must have exhausted administrative remedies before filing a motion for compassionate release with the court. The Court's conclusion is buttressed by the fact that the First Circuit has unequivocally held that a motion for compassionate release may only be filed after a defendant has exhausted his or her administrative remedies. *See, e.g., Quirós-Morales*, 83 F.4th at 84. Here, Ms. Hodges has not exhausted her administrative remedies because she has not yet entered a federal prison to start her sentence.

The Court thus dismisses without prejudice Ms. Hodges's motion for compassionate release.

## IV.    MOTION FOR APPOINTMENT OF COUNSEL

### A.    Legal Standard

Criminal defendants have a constitutional right to legal representation, a right which extends to indigent defendants; however, this right only extends as far as the first direct appeal of their conviction.  U.S. CONST. amend. VI; *Pennsylvania v. Finley*, 481 U.S. at 551, 555 (1987); *United States v. Rossignol*, No. 1:14-cr-00033-JAW-1, 2024 U.S. Dist. LEXIS 83496, at *6 (D. Me. May 8, 2024).

In *United States v. Mala*, the First Circuit applied a three-part standard for when appointment of counsel is warranted: "(1) appellant has shown a fair likelihood of success on the constitutional claim, (2) that claim is  factually complex and legally intricate, and (3) the facts are largely undeveloped and appellant (who is both incarcerated and indigent) is severely hampered in his ability to investigate them." *Id.*, 7 F.3d 1058, 1063-64 (1st Cir. 1993).  This standard has been applied within this district to defendants' requests for appointment of counsel in the context of compassionate release.  *See, e.g.*, *United States v. Doody*, No. 1:19-cr-00134-LEW, 2022 U.S. Dist. LEXIS 196266, at *2 (D. Me. Oct. 28, 2022) ("When determining whether an indigent defendant is entitled to counsel on a post-conviction motion, courts often look to the three-part test for whether to provide court-appointed counsel in the analogous habeas corpus context . . ..  This test asks whether the defendant has 'a fair likelihood of success on' her claim, whether the issues raised are 'factually complex and legally intricate,' and whether 'the facts are largely undeveloped.'" (citing *Mala*, 7 F.3d at 1063-64); *United States v. Morris*, No. 2:16-cr-00002-DBH, 2020 U.S. Dist. LEXIS 141101, at 4 (D. Me. Aug. 7, 2020) (denying a motion to appoint

counsel with regard to defendant's motion for compassionate release because it "cannot conclude that Defendant is likely to succeed on his anticipated request for relief under § 3582, that the request would be factually complex and legally intricate, or that the relevant facts would be largely undeveloped").

### B.    Discussion

Ms. Hodges's motion for appointment of counsel fails under the *Mala* test.  For the reasons explained in this order, she has failed to demonstrate a likelihood of success on her claim, which was likely brought prematurely and without exhausting administrative remedies.  By the plain language of 18 U.S.C. § 3582(c)(1)(A), she is ineligible to move for her requested relief at this stage and her claim is thus unlikely to succeed.

Further, the case does not present complex, legally intricate, or underdeveloped facts.  Rather, Ms. Hodges's motions and attachments provide the Court with a complete record of the basis for her requested relief.  The Court thus dismisses Ms. Hodges's motion for appointment of counsel.

## V.    CONCLUSION

The Court DISMISSES without prejudice Alexis Hodges's Motion for Compassionate Release (ECF No. 88) and Motion to Appoint Counsel (ECF No. 89).

The Court further GRANTS in part and DENIES in part Alexis Hodges's Motion to Seal (ECF No. 89).  The Court GRANTS the motion with regard to the Attached Medical Documents (ECF No. 89-1); the attached medical records must be permanently sealed.  The Court DENIES the motion with regard to the motion to seal itself (ECF No. 89).  The Court further DENIES the motion to seal with regard to the

attached Proposed Release Plan (ECF No. 89-2), but will hold this order in abeyance as to the Proposed Release Plan for a period of two weeks for Ms. Hodges to file a properly redacted version of the Proposed Release Plan.  If Ms. Hodges fails to file a properly redacted version of the Proposed Release Plan within two weeks of the date of this Order, the Court ORDERS the Clerk's Office to unseal the Proposed Release Plan in its entirety.

 SO ORDERED.

     /s/ John A. Woodcock, Jr.
     JOHN A. WOODCOCK, JR.
     UNITED STATES DISTRICT JUDGE

Dated this 24th day of March, 2025