UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:23-cr-00048-JAW-1 |
| | ) | |
| ALEXIS HODGES | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

An incarcerated individual moves for compassionate release on the ground that she is the sole caregiver for two children with serious medical conditions. Concluding she has failed to demonstrate that an extraordinary and compelling reason warrants her release, that the 18 U.S.C. § 3553(a) factors weigh in favor of her release, and that she does not pose a danger to society, the court dismisses the defendant's motion.

## I.    INTRODUCTION

### A.    Procedural Background

On May 24, 2023, a federal grand jury indicted Alexis Hodges on eleven counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. *Indictment* (ECF No. 3). After moving without opposition to amend the indictment for a clerical error and being granted permission by the Court to do so, the United States (the Government) filed an amended indictment on May 8, 2024, again charging Ms. Hodges with eleven counts of wire fraud. *Unopposed Mot. to Amend Indictment to Correct Clerical Error* (ECF No. 46); *Order* (ECF No. 48); *Am. Indictment* (ECF No. 49). The next day, the Government filed a corrected indictment, fixing another clerical error to further clarify its intent to proceed with eleven charges of wire fraud against Ms. Hodges.

*Am. Indictment* (ECF No. 51).  Ms. Hodges pleaded guilty as to all eleven counts on June 28, 2024.  *Min. Entry* (ECF No. 61).

On January 23, 2025, Ms. Hodges was sentenced to twelve months and one day of incarceration on all eleven counts, to be served concurrently; three years of supervised release on all eleven counts, to be served concurrently; a cumulative $1,100 special assessment; and restitution in the amount of $73,291.33.  *Min. Entry* (ECF No. 83); *J.* (ECF No. 85).  Ms. Hodges was ordered to surrender for service of her term of incarceration before 2:00 p.m. on March 26, 2025.  *Min. Entry*; *J.* at 2.

On March 19, 2025, before beginning her sentence of incarceration, Ms. Hodges moved for compassionate release on an expedited basis, submitting she is "the sole care[]giver of her kids who both have life threatening medical conditions" and that she "herself has just undergone surgery for a medical condition that warrants a noncustodial sentence."  *Notice of Mot.* at 1-2 (ECF No. 88) (*Def.'s First Mot.*).  The Court dismissed her motion on March 24, 2025, concluding that Ms. Hodges had brought her motion prematurely and could not request release when she had not yet begun her term of incarceration, and, further, that she had failed to exhaust her administrative remedies by first bringing her request to the Warden of her facility as required by 18 U.S.C. § 3582(c)(1)(A).  *Order on Mot. for Compassionate Release* (ECF No. 92) (*First Order*).

On May 12, 2025, Ms. Hodges filed a second motion for compassionate release on similar grounds.  *Notice of Mot.* (ECF No. 93) (*Def.'s Second Mot.*).  The Government opposed her motion on June 2, 2025, *United States' Opp'n to Mot. for*

*Compassionate Release* (ECF No. 94) (*Gov't's Opp'n*), and Ms. Hodges replied on June 17, 2025. *Resp. to AUSA's Resp. to Mot. for Compassionate Release* (ECF No. 95) (*Def.'s Reply*)

## II.    THE PARTIES' POSITIONS

### A.    Ms. Hodges's Motion for Compassionate Release

Ms. Hodges informs the Court that she "is the sole care[]giver of her kids, who both have life threatening medical conditions" and that she "herself has just undergone surgery for a medical condition that warrants a noncustodial sentence." *Def.'s Second Mot.* at 1-2. She asserts she "does not pose a threat to the community or public safety," and that "the income the defendant makes by working at home is essential to the medical care of her children," describing the "lack of medical insurance coverage to cover the expenses for treatment and medications" while she is not working during her incarceration. *Id.* at 2. Further, Ms. Hodges maintains "she has no one who can step in and replace what she offers the children in financial support, at home caregiver, [and] a mother's love." *Id.* She adds that she has learned her lesson from her criminal prosecution, that she is a different person, and that her criminal prosecution has brought her and her family closer together. *Id.* at 3.

Turning to her legal argument, Ms. Hodges submits that her case presents an extraordinary and compelling reason for her release within the meaning of 18 U.S.C. § 3582(c)(1)(A), specifically under the family circumstances subsection of United States Sentencing Guidelines § 1B1.13, and that she may file her motion directly in court pursuant to the First Step Act of 2018. *Id.* at 4. Elaborating, she notes that an

extraordinary and compelling reason need not be unforeseen at the time of sentence and that other federal courts have recognized being a sole caregiver for minor children can constitute a reason entitling an incarcerated movant to release. *Id.* at 5. In her case, she insists she is the sole caregiver for her minor children and that her incarceration leaves her children without necessary care and financial support. *Id.* (citing *United States v. Dublin*, No. 18-102-JJM-LDA, 2020 U.S. Dist. LEXIS 151443 (D.R.I. Aug. 19, 2020) (citation corrected)). She adds that "the caregiver that was over the children had to get airlifted due to an automobile accident that was no fault of the caregiver." *Id.* She reiterates that her children have serious medical conditions, that "the children have financial security for the payment of doctor appointments and medical prescriptions due to the insurance she ha[d] through her employment," and that "she poses no danger to the community." *Id.* at 5-7. She thus asks the Court to grant her a non-custodial sentence so that she may be the caregiver to her children. *Id.* at 8.

Ms. Hodges attaches an affidavit to her motion, declaring under the penalty of perjury that she "is the primary caregiver for her children, including a child three years old who suffers from hydrocephalus, and the caregiver of the children as a result of an automobile accident is incapable of being the caregiver based on his injuries." *Id.*, Attach. 1, *Aff. in Support of Notice of Mot. Based on Extraordinary Fam. Circumstances* at 1-2 (*Def.'s Aff.*). She avers "[t]he child with hydrocephalus requires constant supervision and frequent doctor appointments which my employment assists with funding," but that there is currently no caregiver available to provide the

4

necessary care for her children.[1]  *Id.* at 2.  She asserts "[t]he lack of adequate childcare here may cause irreparable consequences, especially in light of the fact that both children were born premature."  *Id.*  Ms. Hodges argues that granting her requested sentence reduction "would allow [her] to continue providing necessary care for her children."  *Id.* at 3.

Ms. Hodges also attaches to her motion a copy of the request for administrative remedy she submitted to the Warden of her carceral facility.  *Id.*, Attach. 2, *Req. for Admin. Remedy*.  Filed on March 26, 2025, her request asks the Warden for a grant of compassionate release and attaches an affidavit explaining she seeks this relief as a result of her children's medical conditions.  *Id.* at 1-7.  The administrative request also attaches the judgment issued by the Court at her sentencing on January 23, 2025.  *Id.* at 8-14.  The record does not include any response from the Warden.

## B.    The Government's Opposition

The Government opposes Ms. Hodges's request for compassionate release, arguing she has failed to establish an extraordinary and compelling reason and that her early release would contravene the sentencing factors provided in 18 U.S.C. § 3553(a).  *Gov't Opp'n* at 1.  The Government notes Ms. Hodges faced a Guidelines

---

[1]    Ms. Hodges's affidavit includes the citation "See attached medical documents filed under seal." *Def.'s Aff.* at 2 (Defendant's emphasis omitted).  Her second motion for compassionate release contains no attached medical records, sealed or otherwise.  However, her children's medical records were filed alongside Ms. Hodges's first motion for compassionate release, *see Med. Recs. and Additional Medical Info.*, Attach. 1, *Med. Recs.* (ECF No. 89) which the Court ordered sealed pursuant to *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013) in light of "the privacy rights of third-party minors."  *First Order* at 8-10.  As Ms. Hodges files her presently pending motion pro se, the Court construes her filing liberally to be referring to the medical records attached to her previous motion and already in the record before the Court.  *See Gakuba v. Frey*, Nos. 23-1084, 23-1095, 2024 U.S. App. LEXIS 18703, at *1 (1st Cir. Apr. 10, 2024) (reviewing "pro se papers liberally") (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

5

sentencing range of eighteen to twenty-four months, but the Court imposed a custodial sentence of twelve months and a day, in large part due to her family circumstances, which were discussed at her sentencing at length. *Id.* at 1-2 (citing *Tr. of Proc.* at 15-24, 30-31, 46-59 (ECF No. 90) (*Sent'g Tr.*)).

The Government first submits that Ms. Hodges has not demonstrated extraordinary and compelling family circumstances, pointing out that the Court carefully considered Ms. Hodges's caretaking responsibilities for her minor children at sentencing, *id.* at 3-4 (citing *Sent'g Tr.* at 9-23, 30-33, 35-45, 52, 68) and, though it declined to depart downward on this basis, imposed a variant sentence below the Guidelines range based on her family circumstances. *Id.* (citing *Sent'g Tr.* at 23). The Government characterizes Ms. Hodges's motion for compassionate release as "essentially rehash[ing] her sentencing arguments" and asserts a motion for compassionate release is not an appropriate vehicle to request reconsideration. *Id.* at 4.

The Government acknowledges that one new alleged fact appears in Ms. Hodges's motion: that "the caregiver of the children as a result of an automobile accident is incapable of being the caregiver based on his injuries." *Id.* (citing *Def.'s Aff.*). However, the Government emphasizes that Ms. Hodges "does not identify the caregiver, describe his injuries, explain why the alleged injuries render him incapable of caregiving, or explain why no other caregiver can step in. Nor does [Ms.] Hodges substantiate her assertion that the caregiver is incapacitated." *Id.* The Government argues her "conclusory, unsubstantiated assertion cannot carry her burden." *Id.* at

6

4-5 (collecting federal cases in which courts denied compassionate release based on unsupported arguments).

The Government next submits that the 18 U.S.C. § 3553(a) factors weigh against her release, pointing out that the Court considered these factors at sentencing and observed that Ms. Hodges "stole nearly $100,000 over an extended period of time from a small, family owned business" and, further, that she did so "after having been convicted of, and while on probation for, a prior fraud conviction" for which she had served a custodial sentence. *Id.* at 5 (citing *Sent'g Tr.* at 46-59). The Government submits these factors remain true and reminds the Court of its determination at sentencing that "given you have this prior conviction, I feel compelled to put you in jail for a period of time." *Id.* (quoting *Sent'g Tr.* at 59). The Government reports that Ms. Hodges served only forty-eight days, or approximately thirteen percent, of the custodial term of her sentence before filing her second motion for compassionate release. *Id.*

### C.    Ms. Hodges's Reply

Ms. Hodges's reply reiterates that "her children, particularly her youngest two, have significant medical needs, including one child with hydrocephalus and another born severely premature, requiring ongoing medical care and therapy" and that "the caretaker for her children is incapacitated due to injuries sustained in an accident, leaving no alternative caregiver." *Def.'s Reply* at 1-2. Should she be released, Ms. Hodges argues, the medical insurance provided through her employment would cover her children's care. *Id.* at 2.

7

She submits "the urgent medical needs of her children and lack of an alternative caregiver" constitute extraordinary family circumstances warranting compassionate release pursuant to U.S.S.G. § 1B1.13(b)(3), which describes the death or incapacitation of the caregiver of the defendant's minor child as a qualifying circumstance. *Id.* at 2-3. Here, Ms. Hodges says, she "has provided evidence that the caretaker for her children is incapacitated due to injuries sustained in an accident, leaving her as the only available caregiver," adding she "has submitted supporting documentation, including medical records and affidavits." *Id.* at 3. Ms. Hodges again reiterates her children's medical conditions and argues her release would be consistent with the § 3553(a) factors because she does not pose a danger to the community, would permit her to provide medical and financial support for her children, and would further the goals of rehabilitation and restitution. *Id.* at 4.

Finally, Ms. Hodges asserts she is eligible for home detention or early probation under the First Step Act and Second Chance Act, alleging "[t]hese statutes prioritize the reentry needs of high-risk populations, including caregivers of minor children, and authorize the Attorney General to waive certain requirements to facilitate home detention for eligible offenders." *Id.* at 5. Ms. Hodges submits her circumstances align with the intent of these statutes and concludes the Court should grant her request for compassionate release on this basis. *Id.*

## III.    LEGAL STANDARD

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) states:

The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after

the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Before a court considers a defendant's motion for compassionate release, it must determine whether the defendant has met the procedural prerequisites for bringing such a motion. *See United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 U.S. Dist. LEXIS 63673, at *8 (D. Me. Apr. 10, 2020) (finding satisfaction of the exhaustion or thirty-day requirement of section 3582(c) to be a mandatory prerequisite to a motion for sentence reduction). These requirements are mandatory. *See id.* ("There is no exception to this requirement in the language of section 3582(c), and the Court cannot read one into the section").

When a defendant has shown she has satisfied the procedural prerequisites for bringing a motion for compassionate release, a court may reach the merits of the petition. As explained by the First Circuit, 18 U.S.C. § 3582(c)(1)(A) "carved out a narrow exception to the general rule that '[a] court may not modify a term of imprisonment once it has been imposed.'" *United States v. Quirós-Morales,* 83 F.4th 79, 84 (1st Cir. 2023)) (quoting *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021)). The statute allows district courts to grant a request for sentence reduction if three conditions are met: "extraordinary and compelling reasons warrant a sentence reduction, such a reduction is consistent with any applicable policy statements issued

by the Sentencing Commission, and consideration of the 18 U.S.C. § 3553(a) factors counsels in favor of a reduction." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

In 2023, the United States Sentencing Commission clarified the meaning of "extraordinary and compelling circumstances" within 18 U.S.C. § 3582(c)(1)(A) by promulgating Amendment 814. *See U.S. Sent'g Comm'n, Guidelines Manual*, App. C Supp., Amend. 814.[2]  The Sentencing Commission issued an accompanying policy statement as Section § 1B1.13(b) of the United States Sentencing Guidelines to provide courts with further guidance on the six categories of extraordinary and compelling bases warranting a sentence reduction:  the defendant's 1) "medical circumstances", 2) "age", and 3) "family circumstances"; 4) if the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) if the defendant received an "unusually long sentence." U.S.S.G. § 1B1.13(b) (U.S. Sentencing Comm'n 2018).

U.S.S.G. § 1B1.13 further notes that a movant must meet the "requirements of subdivision (2)," U.S.S.G. Manual § 1B1.13 cmt. n.1, which provides that a court must determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  Section 3142(g) sets forth the

---

[2]    On April 5, 2023, the United States Sentencing Commission submitted Amendment 814 to Congress, as a response to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), which permits criminal defendants to file motions for sentence reduction directly, as opposed to such motions being permitted only from the Bureau of Prisons; this amendment became effective on November 1, 2023.  *See U.S. Sent'g Comm'n, Guidelines Manual*, App. C Supp., Amend. 814.  Among other things, Amendment 814 revised the list of "extraordinary and compelling reasons" that may warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).  *See* U.S.S.G. § 1B1.13(b) (Nov. 1, 2023) (listing extraordinary and compelling reasons); *see also U.S. Sent'g Comm'n, Guidelines Manual*, App. C Supp., Amend. 814, Reason for Amend. at 206 ("The amendment expands the list of specified extraordinary and compelling reasons and retains the 'other reasons' basis").

factors a court must consider before releasing a person pending trial; U.S.S.G. §
1B1.13 incorporates these same standards into the assessment of a request for
compassionate release. They include (1) the nature and circumstances of the offense,
specifically whether the crime is a crime of violence or involves a controlled substance;
(2) the weight of the evidence against the person; (3) the history and characteristics
of the person; and (4) the nature and seriousness of the danger to any person or the
community that would be posed by the person's release. 18 U.S.C. § 3142(g).
Regarding factor (3), the history and characteristics of the person, the statute directs
the court to consider:

> (A)    the person's character, physical and mental condition, family
>        ties, employment, financial resources, length of residence in the
>        community, community ties, past conduct, history relating to
>        drug or alcohol abuse, criminal history, and record concerning
>        appearance at court proceedings; and
>
> (B)    whether, at the time of the current offense or arrest, the person
>        was on probation, on parole, or on other release pending trial,
>        sentencing, appeal, or completion of sentence for an offense
>        under Federal, State, or local law.

18 U.S.C. § 3142(g)(3)(A-B).

Finally, to warrant compassionate release, a defendant must also establish
that a grant of sentence reduction comports with the factors described in 18 U.S.C. §
3553(a). *Saccoccia*, 10 F.4th at 3. This statutory section provides that the Court must
consider, inter alia:

> (1)    the nature and circumstances of the offense and the history and
>        characteristics of the defendant;
>
> (2)    the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

The movant has the burden of showing her entitlement to a reduced sentence, and "the Court 'has broad discretion in deciding whether to grant or deny a motion for sentence reduction.'" *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, No. 18-cr-108-LM, 2020 U.S. Dist. LEXIS 83396, at *4 (D.N.H. May 12, 2020) (internal citation omitted)).

## IV.   DISCUSSION

As a threshold matter, the Court notes that Ms. Hodges filed an administrative request with the Warden of FDC Miami, the facility in which she is incarcerated, on March 26, 2025. *Req. for Admin. Remedy*. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), "[t]he Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." Though no response from the Warden is

attached to her motion, Ms. Hodges filed her second motion for compassionate release in this Court on May 12, 2025, forty-seven days after she requested administrative relief from the Warden.  The Government does not contest Ms. Hodges's exhaustion of her administrative remedies; the Court concludes that Ms. Hodges has satisfied her threshold burden and proceeds to the merits of her motion.

### A.    Extraordinary and Compelling Reasons

Ms. Hodges moves for compassionate release pursuant to § 1B1.13(b)(3) of the United States Sentencing Guidelines, which provides a list of circumstances that qualify as extraordinary and compelling reasons. U.S.S.G. § 1B1.13(b).  In relevant part, the Sentencing Guidelines states:

**(3)** Family circumstances of the defendant.

> **(A)** The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

> **(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> **(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

> **(D)** The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual.  For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3) (emphasis in original).

Ms. Hodges bases her motion for compassionate release on the health of two of her three children, whom she describes as having "life threatening medical conditions." *Def.'s Second Mot.* at 1. Specifically, she informs the Court that one of her children is "three years old [and] suffers from hydrocephalus," a condition she says "requires constant supervision and frequent doctor appointments." *Def.'s Aff.* at 2. She asserts "there is no available caregiver to provide the necessary care for [her] children, particularly the child with special medical needs" and directs the Court generally to her children's medical records. *Id.* at 2 (citing, generally, *Med. Recs.*). The medical records for Defendant's minor daughter, Q.G., evidence that in multiple medical evaluations conducted between November 2021 and March 2022, Q.G., who was born prematurely in September 2021, was diagnosed with post-hemorrhagic hydrocephalus. *Med. Recs.* at 2-34. The medical records further document an additional medical appointment conducted virtually on June 18, 2022. *Id.* at 35.

The medical records also contain information regarding Ms. Hodges's son, D.B., who was born prematurely in December 2023 and required extensive care for an intestinal infection and other conditions related to premature delivery. *Id.* at 36-51. These medical records reflect additional medical appointments to follow up on these conditions until October 2024. *Id.* In her second motion for compassionate release, Ms. Hodges further submits that "there is no available caregiver to provide the necessary care for the defendant's children," explaining "the caregiver of the children as a result of an automobile accident is incapable of being the caregiver based on his injuries." *Def.'s Aff.* at 2.

U.S.S.G. § 1B1.13(b)(3)(A-D) describes extraordinary and compelling reasons for relief based on the incapacitation of caregivers which has resulted in a vulnerable family member of the defendant being without care. *See* U.S.S.G. § 1B1.13(b)(3)(A) (for "death or incapacitation of the caregiver of the defendant's minor child" or adult child who is incapable of self-care); U.S.S.G. § 1B1.13(b)(3)(B) (for "incapacitation of the defendant's spouse or registered partner" when defendant is only available caregiver for that partner); U.S.S.G. § 1B1.13(b)(3)(C) (for "incapacitation of the defendant's parent" when defendant is only available caregiver); U.S.S.G. § 1B1.13(b)(3)(D) (a catch-all provision for "circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual").

Ms. Hodges's motion for compassionate relief tells the Court solely that "the caregiver of the children as a result of an automobile accident is incapable of being the caregiver based on his injuries." *Def.'s Aff.* at 2. As the Government points out, Ms. Hodges "does not identify the caregiver, describe his injuries, explain why the alleged injuries render him incapable of caregiving, or explain why no other caregiver can step in. Nor does [Ms.] Hodges substantiate her assertion that the caregiver is incapacitated." *Gov't's Opp'n* at 4.

The First Circuit has made clear that a movant for compassionate release bears the burden of establishing extraordinary and compelling reasons support her

15

requested relief. *See, e.g.*, *United States v. Galiany-Cruz*, No. 22-1196, 2023 U.S. App. LEXIS 26539, at *1 (1st Cir. June 6, 2023) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)).   Federal courts have uniformly held that conclusory statements, unsubstantiated by evidence on the record, cannot satisfy this burden. *See, e.g.*, *United States v. Santiago*, No. 1:13-cr-00010-MSM-LDA, 2024 U.S. Dist. LEXIS 102538, at *4-5 (D.R.I. June 10, 2024) ("'Without more evidence' from [the defendant], 'the Court cannot find that these other family members are unable to provide adequate care'") (quoting *United States v. Figueroa-Gibson*, Crim. No. 16-802 (RAM), 2024 U.S. Dist. LEXIS 21088, at *16 (D.P.R. Jan. 31, 2024)); *accord United States v. Cameron*, No. 1:13-cr-00001-JAW-1, 2024 U.S. Dist. LEXIS 224710, at *43-44 (D. Me. Dec. 12, 2024) (concluding the defendant had failed to establish extraordinary and compelling reasons "[d]espite his conclusory assertions"); *United States v. Saunders*, No. 4:19-cr-68-28, 2025 U.S. Dist. LEXIS 102688, at *12 (E.D. Tex. May 30, 2025) ("Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient") (citing *United States v. Newman*, No. CR 122-031, 2024 U.S. Dist. LEXIS 33607, at *4 (S.D. Ga. Feb. 27, 2024)).   The Court will not deviate from this robust authority and concludes Ms. Hodges unsupported assertions that she is the sole caregiver and that some other, unnamed caregiver is incapacitated does not satisfy her burden of proof.

Her conclusory statements regarding the incapacitation of an unnamed caregiver aside, the Court cannot conclude on the factual record before it that Ms. Hodges is the sole available caregiver for her children.  The Presentence Investigation

Report (PSR) prepared in August 2024 and revised in September 2024 reflects that Ms. Hodges, at the time of sentencing, lived with Demetrius Bradford, her partner and the father of D.B. *Revised Presentence Investigation Rep.* ¶ 53 (ECF No. 72) (*PSR*). Ms. Hodges has presented no evidence to suggest her children no longer live with Mr. Bradford, nor that he is person she now alleges is incapacitated and unable to provide childcare within the meaning of U.S.S.G. § 1B1.13(b)(3). The caselaw of this District reflects "that a defendant's children suffering during their parent's incarceration is a sadly ordinary circumstance" and competing obligations of the non-incarcerated parent do not "rise[] to the level of the incapacitation of the children's parent." *United States v. Greene*, No. 1:17-cr-00012-NT-1, 2020 U.S. Dist. LEXIS 138074, at *9-10 (D. Me. Aug. 4, 2020).

Further, even if the Court concludes that Ms. Hodges had successfully established that Mr. Bradford is the person injured in the automobile accident and that he is indeed incapacitated within the meaning of U.S.S.G. § 1B1.13(b)(3), the record establishes that Ms. Hodges has numerous other family members and friends who remain supportive of her and also reside in the state of Florida; Ms. Hodges's motion for compassionate release presents no factual evidence demonstrating the basis for her conclusion that there is nobody available to care for her children while she is incarcerated. *Compare Def.'s Second Mot.* at 1-2 (stating she is the sole available caregiver) *with PSR* ¶ 50 (describing her family members); *Def.'s Sent'g Mem.* at 11-13 (quoting letters in support from two of her siblings, her aunt, and three longtime friends). The Court stated as much at sentencing, expressing its doubt

"given [] the number of people, including someone who[ is] living in the house, namely Mr. Bradford, who wrote for her and lives in Florida, would not step up and provide an acceptable level of care." *Sent'g Tr.* at 22:23-24:1. Without a factual showing based on evidence that she is the only potential caregiver, her desire for release to care for her children "is not an 'extraordinary' circumstance." *United States v. Pelletier*, No. 2:12-cr-00119-GZS, 2022 U.S. Dist. LEXIS 131105, at *7 & n.6 (D. Me. July 25, 2022) (concluding the defendant failed to show he was the only potential caregiver and denying the defendant's motion for compassionate release); *accord Greene*, 2020 U.S. Dist. LEXIS 138074, at *9-10.

The Court concludes Ms. Hodges has failed to establish an extraordinary and compelling reason to grant her compassionate release. The Court could end its analysis here, but, because it does not affect the outcome of this order, continues to briefly explain why the danger posed to society by Ms. Hodges and the 18 U.S.C. § 3553(a) factors also do not support her requested relief.

### B.    18 U.S.C. § 3553(a) Factors

Separately, the Court concludes the 18 U.S.C. § 3553(a) factors do not weigh in favor of granting Ms. Hodges's requested release. Under 18 U.S.C. § 3553(a), the Court considers:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to criminal conduct;

18

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

### 1.    Guideline Calculations at Sentencing

At Ms. Hodges's sentencing, the Court determined that, under the Sentencing Guidelines, violations of 18 U.S.C. § 1343 are assigned a base offense level of seven. *Statement of Reasons*, Attach. 1, *Findings Affecting Sent'g* at 1 (ECF No. 86). Based on a loss amount more than $95,000 but less than $150,000, her offense level was increased by eight points. *Id.* Her offense level was then reduced by two levels for acceptance of responsibility, resulting in her final total offense level of thirteen. *Id.* Ms. Hodges had a Criminal History Category III. *Id.* at 2. Based on a total offense level of thirteen and a Criminal History Category III, the Court calculated an applicable recommended range of imprisonment under the Sentencing Guidelines of eighteen to twenty-four months. *Id.*

### 2.    Ms. Hodges's History and Characteristics

The PSR establishes that Ms. Hodges was born in 1985 in Zephyrhills, Florida, into a family with three biological siblings and seven paternal half-siblings, though she remains close with only one sibling and half-sibling. *PSR* ¶ 50. Her mother struggled and continues to struggle with mental health and substance abuse issues and Ms. Hodges lacked a close relationship with her father, though he was endeavoring to build a better bond with her children until he passed away from cancer. *Id.* Ms. Hodges was instead raised by her maternal grandparents, who she reports ran a strict household and have since passed away. *Id.* ¶ 51. Ms. Hodges has

19

three minor children: A.W., D.B., and Q.G. *Id.* ¶ 53. As discussed in this order, D.B. and Q.G. have encountered significant medical issues in their young lives, including conditions related to premature birth and specifically hydrocephalus which require continuing treatment and monitoring. *Id.* ¶¶ 53, 53A.

In 2011, Ms. Hodges graduated from Edward Waters University in Jacksonville, Florida with a Bachelor of Science in Business Administration. *Id.* ¶ 57. She obtained her permanent makeup license in 2015 and has attended Phlebotomy School in Tampa, Florida on a part-time basis. *Id.* At the time of her interview, Ms. Hodges worked fulltime for DRG Pain and Orthopedics in Leesburg, Florida as a medical assistant. *Id.* ¶ 58. Ms. Hodges also opened her own business, Boss Diva Brows and Beauty in Tampa, Florida in 2015, though she noted this business does not operate fulltime because of difficulty obtaining customers. *Id.*

Notably, the present conviction is not Ms. Hodges's first run-in with the judicial system. To the contrary, Ms. Hodges was convicted in Florida state court of burglary with assault or battery in April 2012 for striking a third party through the open window of a vehicle, for which she was sentenced to two years' incarceration. *Id.* ¶ 37. She was further convicted in Florida state court in March 2012 of identity theft of more than ten persons, defraud of a financial institution, and schemes to defraud relating to customer information stolen while she was an employee of CitiGroup. *Id.* ¶ 38. She was sentenced to thirty months' incarceration and seven years' probation on those charges. *Id.*

20

### 3.    Nature and Circumstances of Ms. Hodges's Offense

In the present case, the owners of the Kennebunk Inn in Kennebunk, Maine identified several anomalies in their financial records from the later part of 2019 and continuing through 2020.  *Id.* ¶ 6.  After notifying a Kennebunk Police officer in September 2021, the officer determined it appeared to be the case of an account takeover fraud in which a cybercriminal gains access to the victim's login credentials to steal funds or information.  *Id.*  A closer review of the owners of the Kennebunk Inn identified numerous electronic debits in their checking account to entities including Progressive Insurance, Chrysler Financial, Ally Bank, Main Street Renewal, and First Premier Bank that they did not authorize.  *Id.*  When these entities were contacted, automobile insurance and loan payments, rent payments, and other payments were connected to Ms. Hodges in a total intended loss amount of $99,571.49.  *Id.* ¶¶ 7-12.

### 4.    The Need for Ms. Hodges's Imposed Sentence

After an extensive colloquy regarding her family circumstances and children's health at the January 23, 2025 sentencing hearing, *see Sent'g Tr.* at 10:9-23:8, the Court explained that, though her family circumstances did not qualify for a downward departure under § 5H1.6 of the Sentencing Guidelines, the Court would consider these circumstances in its sentencing determination under 18 U.S.C. § 3553(a).  *Id.* at 23:5-8.  Indeed, the discussion of Ms. Hodges's children's medical condition spans nearly fourteen pages of the transcript of the sentencing hearing and evidences the Court's detailed understanding of and concern about the specific

medical conditions relevant here and of First Circuit caselaw relating to convictions of the caregivers of children with health concerns. *Id.* at 10:9-23:8.

Further, in applying the 18 U.S.C. § 3553(a) factors, the Court specifically noted Ms. Hodges's history and characteristics, the nature and circumstances of her offense, and the purposes of sentencing, including to deter the defendant and general public from future crimes, need to provide restitution to the victim, and need for just punishment. Its discussion of Ms. Hodges's history and characteristics again included reference to the medical conditions of her two younger children, which the Court noted were "significant" and had been "discussed previously in detail" during the sentencing hearing. *Sent'g Tr.* at 48:7-12.

The Court also emphasized the need to deter Ms. Hodges from future criminal activity, pointing out this is her second fraud conviction and that she began the scheme giving rise to her present conviction while still on probation from her first. *Sent'g Tr.* at 52:3-8. The Court also highlighted the significant amount of money— nearly $100,000—that Ms. Hodges stole from a small Maine business and the sophistication of Ms. Hodges's scheme to siphon money through repeated small transactions directly with other businesses, rather than large lump sums to an individual that may have triggered discovery. *Sent'g Tr.* at 28:5-22. Weighing all these factors, the Court ultimately imposed a sentence of twelve months and one day of incarceration, informing her that, with credit for good time, her custodial term would be approximately ten months.

22

In reviewing the Court's imposition of sentence, nothing since sentencing has changed to indicate that a sentence reduction is warranted under 18 U.S.C. § 3553(a). Despite the seriousness of her crimes, the Court exercised substantial leniency because of Ms. Hodges's family circumstances by imposing a term of incarceration of half the low end of range recommended by the Sentencing Guidelines.

Leniency, however, must have a limit. As discussed, Ms. Hodges stole a substantial amount of money from a local business and did so while on probation from a prior theft. At Ms. Hodges's sentencing hearing, the Court described as "[a] major issue" the need to deter her from committing any more crimes. *Sent'g Tr.* at 51:16-17. As noted, Ms. Hodges had committed a serious prior crime of fraud in which she had "engaged in identity theft, defrauded a financial institution, engaged in a scheme to defraud between February 2010 and August 2010, when she was employed at Citigroup." *Id.* at 51:19-21. A Florida state court had sentenced her to thirty months of incarceration and seven years of probation, and she was still on probation for that crime, when she committed this federal crime of fraud. *Id.* at 51:21-52:2.

The Court takes seriously its obligation to protect the public from further crimes of the Defendant and concludes granting Ms. Hodges's requested relief of a noncustodial sentence would fail to protect the public from potential future victimization or deter her and the public from future crimes. As of the date of filing her second compassionate release motion, Ms. Hodges has served only forty-eight days, or approximately thirteen percent, of the custodial term of her sentence. *Gov't's Opp'n* at 5. As explained at sentencing, "given you have this prior conviction, I feel

compelled to put you in jail for a period of time." *Sent'g Tr.* at 59:7-8. Granting Ms. Hodges's motion for early release now would not adequately reflect the seriousness of the offense, promote respect for law, or provide just punishment.

For these reasons, the Court concludes the 18 U.S.C. § 3553(a) do not support a grant of compassionate release.

### C. Consistency of Sentence Reduction with Applicable Policy Statements of the United States Sentencing Commission

Finally, for similar reasons, the Court concludes granting Ms. Hodges's request for compassionate release would be inconsistent with the applicable policy statements of the United States Sentencing Commission. U.S.S.G. § 1B1.13 incorporates the standards for release pending trial of 18 U.S.C. § 3142(g) into a court's review of a motion for compassionate release, specifically requiring a court to determine that "the defendant is not a danger to the safety of any other person or to the community." Factors considered in evaluating a movant's danger to society include (1) the nature and circumstances of the offense, specifically whether the crime is a crime of violence or involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The Court's review of these factors reinforces its conclusion that Ms. Hodges has not established her entitlement to compassionate release. Several key facts lead the Court to this conclusion. First, Ms. Hodges's crime was sophisticated and designed to remain undiscovered. She stole nearly $100,000 from a small business

and did so in incremental payments to businesses over a period of two years to avoid detection. *Sent'g Tr.* at 28:5-22, 55:6-11. Second, this is her second fraud conviction, and in fact she began perpetrating the current scheme while still on probation from her first. *Id.* at 51:16-52:8. Third, the evidence against Ms. Hodges was overwhelming; indeed, she pleaded guilty to the offense and did not dispute that she had engaged in the fraudulent scheme. *See Min. Entry* (ECF No. 61) (guilty plea entered by Ms. Hodges and accepted by the Court). In light of these facts, the Court cannot determine "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and thus concludes granting her motion for compassionate release would be inconsistent with the United States Sentencing Commission's policy statement published U.S.S.G. § 1B1.13.

For the foregoing reasons, the Court concludes Ms. Hodges has failed to establish her entitlement to her requested relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

## V.    CONCLUSION

The Court DISMISSES without prejudice Alexis Hodges's Motion for Compassionate Release (ECF No. 93).

SO ORDERED.

> /s/ John A. Woodcock, Jr.
> JOHN A. WOODCOCK, JR.
> UNITED STATES DISTRICT JUDGE

Dated this 30th day of June, 2025

25