UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.               )   No. 2:23-cr-00048-JAW-1<br>)<br>ALEXIS HODGES              ) | |

**ORDER ON MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE**

The court dismisses without prejudice a defendant's request to eliminate a special condition of her terms of supervised released that requires the court's written pre-approval before she obtains self-employment. Consistent with First Circuit caselaw, the court explains why the restriction is reasonably related to her underlying conviction, necessary to protect the public, and the minimum restriction needed to protect the public.

**I.   INTRODUCTION**

On June 28, 2024, Alexis Hodges pleaded guilty to eleven counts of wire fraud, arising from unauthorized wire transfers she made with a stolen bank account number. *Change of Plea H'rg* (ECF No. 61); *Am. Indictment* (ECF No. 51). On January 23, 2025, the Court sentenced Ms. Hodges to a twelve month and one day term of imprisonment with three years of supervised release. *J.* (ECF No. 85). On July 2, 2025, while serving her prison term, the U.S. Probation Office (Probation) filed a request to modify Ms. Hodges's conditions of release, including a special condition that Ms. Hodges "obtain prior written approval from the Court before entering into self-employment." *Req. for Modifying the Conditions or Term of Supervision with the Consent of the Offender* (ECF No. 97) (*Consented to Modified*

*Conditions*). Probation's request included a signed waiver from Ms. Hodges consenting to the modification and voluntarily waiving her right to a hearing and assistance of counsel to challenge her modified supervised release conditions. *Id.*, Attach. 1, *Waiver of H'rg to Modify Conditions* (*Waiver*). The next day, the Court granted Probation's request to modify the conditions of Ms. Hodges's supervised release. *Order* (ECF No. 98). Ms. Hodges was released from prison, subject to her conditions of supervised release, on November 14, 2025. *Gov't's Opp'n to Mot. to Modify Conditions of Supervised Release* at 3 (ECF No. 104) (*Gov't's Opp'n*).

On December 16, 2025, Ms. Hodges filed a motion to modify her conditions of supervised release, seeking to strike the special condition prohibiting self-employment without prior written approval from this Court. *Mot. to Modify Conditions of Supervised Release* (ECF No. 99) (*Def.'s Mot.*). The United States Government filed their response in opposition to Ms. Hodges's motion on January 16, 2026, *Gov't's Opp'n*, and Ms. Hodges filed her reply on January 23, 2026. *Def.'s Final Aggressive Suppl. Reply to Gov't's Opp'n* (ECF No. 105) (*Def.'s Reply*).

## II.   THE PARTIES' POSITIONS

### A.   Alexis Hodges's Request

Ms. Hodges moves to eliminate her special condition requiring this Court's prior written approval before engaging in self-employment, which she characterizes as a "wholesale ban on self-employment." *Def.'s Mot.* at 6. Ms. Hodges avers the Court cannot impose the special condition because the restriction is unlawful. *Id.* at 2. Specifically, Ms. Hodges claims her self-employment restriction is based on

2

incorrect or unreliable information, unconstitutionally overbroad, undermines the purpose of her supervised release, and less restrictive alternatives exist. *Id.* at 2-6. Ms. Hodges asks the Court to remove the self-employment restriction from her condition of supervised release and allow her to manage her three businesses, which she emphasizes she "operated long before the alleged offense conduct." *Id.* at 1, 6. She also asks that "any employment-related conditions be narrowly tailored to address legitimate risk" and "not based on inaccurate or speculative facts." *Id.* at 6.

### B.     The Government's Opposition

The Government opposes Ms. Hodges motion. Employment-based restrictions as a condition of supervised release, the Government explains, are lawful so long as they bear a reasonably direct relationship to the offense conduct and the restriction is reasonably necessary to protect the public. *Gov't's Opp'n* at 3-4 (citing caselaw). The Government maintains the self-employment pre-approval restriction directly relates to her offense conduct, given her history of stealing customer account information to perpetrate financial crimes, and reasonably protects the public from future abuse of customer financial information by Ms. Hodges. *Id.* at 4-6.

In addition, the Government attached to its opposition screenshots of her Facebook pages. *Id.*, Attach. 1, *Facebook Screenshots* at 1-5 (*Facebook*). Pages four and five depict Ms. Hodges's advertising financial services for the 2024 tax season, including a chat between Ms. Hodges and another person dated January 9, 2025. *Id.* at 4-5. January 9, 2025 was two weeks before her federal sentencing date. *See Min. Entry* (ECF No. 83). Pages one through three show Ms. Hodges operating the same

3

financial services company, advertising notary services, tax preparation, LLC and corporate taxes, audit protection, and advance loans for the 2025 tax season, and stating that she was accepting new clients. *Id.* at 1-3. In her Facebook profile, Ms. Hodges described herself as a tax and credit specialist, an allied health instructor, a digital creator, a trainer at Caring Arms Mobile Labs, the owner and CEO of Q&A Financial Services, and the Owner and Founder at Boss Divas Brows & Beauty. *Id.* at 1.

  **C.** **Alexis Hodges's Reply**

In her reply, Ms. Hodges seeks "to correct factual inaccuracies and rebut unsupported assumptions forming the foundation of the Government's Opposition." *Def.'s Reply* at 1. As an attachment to her reply, Ms. Hodges penned a letter providing the dates when she began operating her businesses. *Id.*, Attach. 1, *Letter*. According to her letter, Ms. Hodges serves in a managerial position and her staff, rather than herself, handles all customer information. *Id.* at 1. She also disputes Probation's stated basis for her self-employment pre-approval restriction, arguing that "advertising [her] business is not evidence of . . . misconduct." *Id.* Finally, she explains she "remained crime-free for more than 10 years before [the instant] case" and claims she is "not the individual who committed the fraudulent acts" of her underlying conviction. *Id.*

**III. LEGAL STANDARD**

Upon consideration of the factors set forth in 18 U.S.C. § 3553(a), a district court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18

4

U.S.C. § 3583(e)(2).  Generally, a special condition of supervised release must be "based on the circumstances of the offense and the defendant's history" and "'involve[ ] no greater deprivation of liberty than is reasonably necessary' to achieve the goals of sentencing," including protection of the public, deterrence, and rehabilitation.  *United States v. Benoit*, 975 F.3d 20, 26 (1st Cir. 2020) (quoting 18 U.S.C. § 3583(d)); *see also* U.S. SENT'G GUIDELINES MANUAL (U.S.S.G.) § 5D1.3(b) (U.S. SENT'G COMM'N 2025) (providing that district court may impose discretionary conditions of supervised release); 18 U.S.C. § 3553(a)(2) (listing the goals of sentencing).  "Occupational restrictions, however, require even more."  *United States v. Reardon*, 102 F.4th 558, 563 (1st Cir. 2024) (explaining "occupational restrictions are subject to a heightened standard" because of "the impact such restrictions can have on individuals' ability to re-enter society after imprisonment") (citing *United States v. Vélez-Luciano*, 814 F.3d 553, 562 (1st Cir. 2016), then citing *United States v. Prochner*, 417 F.3d 54, 65 (1st Cir. 2005)).

As the First Circuit explained in *Reardon*, a district court may impose occupational restrictions as a special condition of supervised release "only if it determines that: (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense conviction" and (2) "such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in similar unlawful conduct."  *Id.* (quoting U.S.S.G. § 5F1.5(a)); *see also* 18 U.S.C. § 3563(b)(5) (permitting occupational restrictions to the extent they are

5

reasonably related to the § 3553(a)(1) and (a)(2) factors and "involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2)"). Additionally, the district court may only impose the occupational restriction "'for the minimum time and to the minimum *extent* necessary to protect the public.'" *Id.* at 564 (quoting U.S.S.G. § 5F1.5(b)) (emphasis in original).

## IV.   DISCUSSION

### A.   Violate First Ask Permission Later

Before reaching the merits of her motion, the Court addresses two issues. First, the letter attached to Ms. Hodges's reply confirms that she is currently in violation of her special condition requiring this Court's approval before engaging in self-employment. In her letter, Ms. Hodges lists ongoing personal business ventures for which she has not yet sought Court approval. *Letter* at 1. Ms. Hodges writes that she opened her salon, BOSSDIVA BROWS & BEAUTY in 2015, her companion-care business in 2021, and her financial services business in 2020, incorporating it in 2022. *Id.* Ms. Hodges stresses that she does "not access PII" (presumably personal identifying information) and assures the Court that her "office manager handles all intakes" and "[s]even staff members process all documents, IRS uploads, and data entry." *Id.* Regarding her other businesses, she explains that she has "two booth renters in my salon, one employee in companion-care services, and [that she] teach[es] allied-health classes that do not involve financial information." *Id.*

Ms. Hodges's January 21, 2026 letter thereby unequivocally establishes that she is now violating one of the special conditions that she consented to on June 2, 2025:

6

> The defendant shall obtain written approval from the Court before entering into any self-employment.

*Consented to Modified Conditions* at 1. From the Court's perspective, there is nothing ambiguous or confusing about this condition. Before she engages in self-employment, she must obtain court approval. She has not.

Moreover, Probation's request for this condition was triggered by her running a financial services business:

> In addition, a tax service company, Q & A Financial Services, was found to have been opened by the defendant while she was on pretrial supervision. The most recent annual report was filed on March 25, 2025, while she was awaiting her surrender to prison. Her pretrial conditions states that she was not to have access to personal identifiable information; however, she actively promoted her company on the internet and social media. Due to the nature of the offense involving her personally owned companies, these findings cause concern about her ability to remain in compliance with her supervision conditions when released.

*Id.* at 2. Thus, it is clear that the restriction against self-employment was directly related to her continuing to operate a financial services company; yet Ms. Hodges ignored the restriction and re-entered self-employment without requesting prior permission from the Court. Ms. Hodges's violate first and ask permission later approach to supervised release compliance is entirely unacceptable to the Court.

Although Ms. Hodges may ask this Court to modify her special conditions, the law unequivocally requires her compliance with those restrictions throughout her term of supervised release unless and until those conditions are changed by the Court. This includes the special condition requiring this Court's approval before she

7

engages self-employment, regardless of any precautions she takes to avoid handling customer information. *Id.*

### B. Violation of the Special Condition the Defendant Consented To

Second, the Court notes that Ms. Hodges previously consented to the special condition that she now challenges as unlawful. *See Waiver*; *Def.'s Mot.* at 2-6. Similarly, in signing the waiver, Ms. Hodges agreed with Probation's stated grounds for the self-employment restriction that the special condition was necessary "[t]o address [Probation's] concerns regarding her future supervision." *Consented to Modified Conditions* at 2-3. Ms. Hodges offers no explanation for this change in position. Nor does she address any of the underlying concerns that caused Probation to consider the self-employment restriction necessary.

### C. Reasonably Direct Relationship between Occupational Restriction and the Offense Conduct

The Court finds a reasonably direct relationship exists between this Court's self-employment pre-approval requirement and Ms. Hodges's offense conduct. At her guilty plea and at her sentencing hearing, Ms. Hodges, living in Florida, admitted to committing a serious and sophisticated financial fraud against a family business in Kennebunk, Maine. Somehow Ms. Hodges managed to gain access to the business's checking account and over the course of about two years, Ms. Hodges repeatedly and continually stole money from the business, paying her personal bills out of the business's account. *See Prosecution Version* (ECF No. 50); *Revised Presentence Investigation Report* (ECF No. 72) (*PSR*). The fraud here was significant, amounting

8

to an intended loss of $99,571.49, *PSR* ¶ 12, and a restitution obligation of $72.291.33. *J.* at 6 (ECF No. 85).

Moreover, Ms. Hodges's offense conduct—unauthorized wire transfers with stolen bank account information—bears a striking resemblance to her 2011 conviction for identity theft, defrauding a financial institution, and schemes to defraud in which Ms. Hodges, while an employee with CitiGroup, made unauthorized charges to customer accounts. *See* U.S.S.G. § 5F1.5(a); *PSR* ¶ 38. Considering Ms. Hodges's history of fraudulent schemes related to others' personal identifying and financial information, the self-employment pre-approval requirement allows the Court to block Ms. Hodges from engaging in activity that involves the risk of abusing customers' personal and financial information in the future.

Indeed, Probation's stated cause for requesting the self-employment restriction arose from Ms. Hodges's creation and online promotion of her tax preparation business, Q & A Financial Services, while subject to pretrial conditions that prohibited her access to others' personal identifiable information. *Consented to Modified Conditions* at 2. Upon release, Ms. Hodges has continued to promote her tax filing services on social media, including offering advance loans. *Gov't's Opp'n* at 4-6; *Facebook*. At bottom, the self-employment pre-approval condition allows Ms. Hodges to earn an income while simultaneously providing the Court a policing mechanism to ensure she does not put the public at risk of financial fraud. *See United States v. Mercado*, 777 F.3d 532, 539 (1st Cir. 2015) ("The conditions appear to draw heavily on the defendant's history and characteristics and are buttressed by case-

9

specific reasons") (citing *United States v. Gilman*, 478 F.3d 440, 446 (1st Cir. 2007); *United States v. Turner*, 88 F. App'x 307, 314 (10th Cir. 2004) (unpublished) (finding reasonably direct relationship between defendant's bank fraud and restricting his self-employment as a roofer because he used his roofing business to facilitate the fraud and, after initial sentencing, failed to provide information about his business activities to probation).

      **D.**    **Risk of Continued Unlawful Conduct without the Occupational Restriction and the Need to Protect the Public**

Next, the Court determines Ms. Hodges's self-employment pre-approval restriction is necessary to protect the public against future unlawful conduct. *See* U.S.S.G. § 5F1.5(a). As explained above, Ms. Hodges has a history of abusing customers' personal and financial information to perpetrate fraud. *Change of Plea H'rg*; *J.*; *PSR* ¶ 38. Notably, Ms. Hodges has not sought the Court's approval for self-employment with her company Q & A Financial Services. *See Facebook*. Thus, given Ms. Hodges's history of financial fraud, considered in combination with her disregard for her pretrial conditions and her active violation of her special condition requiring the Court's pre-approval for self-employment through the creation and promotion of her tax preparation business, the Court finds there is a high risk Ms. Hodges will abuse others' personal and financial information through entities such as Q & A Financial Services. Pre-approval from this Court protects the public from this risk by allowing the Court the opportunity to block Ms. Hodges's from operating her tax preparation business, which necessarily involves collecting personal financial

information from customers who are not aware of Ms. Hodges's history of defrauding customers.

### E. Scope of the Occupational Restriction

Finally, the Court determines Ms. Hodges's self-employment pre-approval restriction is the minimum restriction necessary to protect the public. *See* U.S.S.G. § 5F1.5(b). This special condition is precisely tailored to protect the public from the risk of being defrauded by Ms. Hodges, while still allowing Ms. Hodges to obtain self-employment if she convinces Probation and the Court that the public will be protected. In other words, pre-approval from this Court will "preclude [Ms. Hodges's] continuation or repetition of illegal activities while avoiding a bar from employment that exceeds [the scope] needed to achieve that result." U.S.S.G. § 5F1.5 cmt. Background (quoting S. Rep. No. 225, at 96-97 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3279-80); *see also United States v. Fey*, 834 F.3d 1, 6 (1st Cir. 2016) (upholding scope of condition requiring defendant to "seek preapproval from probation before accepting a job or volunteer activity that would bring him into direct contact with minors" where underlying conviction arose from incident at his workplace with a minor volunteer); *United States v. DaSilva*, 844 F.3d 8, 14 (1st Cir. 2016) ("giving the probation officer some authority to make exceptions as warranted is generally seen as a benefit of such orders in that it allows for flexibility and permits personal circumstances to be dealt with as they arise") (citing *United States v. Pabon*, 819 F.3d 26, 31-32 (1st Cir. 2016); *Mercado*, 777 F.3d at 539 (finding it significant

that a condition was not "an outright ban" but instead "merely require[d] . . . pre-approv[al] by the probation officer").

To be clear, the Court's self-employment restriction does not prevent her from becoming self-employed. It only requires her to obtain pre-approval from the Court before doing so. If Ms. Hodges wishes to engage in self-employment, she must present the details of that employment to Probation, and both Probation and the Court will review her planned self-employment to make certain that there are sufficient checks and oversight to protect the public.

In addition, although it is apparent, the Court stresses that the restriction is against self-employment, not against employment by others. Thus, if Ms. Hodges wishes to work in the financial services industry or as a tax preparer, she can always work for someone else, who will presumably have control of her access and use of confidential information.

### F. False Assertion of Innocence

With this said, before Ms. Hodges filed her reply, the Court has been under the impression that she accepted full responsibility for eleven counts of wire fraud against the Maine business charged in the indictment. Ms. Hodges pleaded guilty and at the Rule 11 hearing, she admitted she committed the prosecution version of the conduct that gave rise to the wire fraud charges. *Chang of Plea Hr'g*. At her sentencing hearing, Ms. Hodges admitted that the contents of the revised presentence investigation report, which contained a detailed description of her fraud, were true.

12

*Tr. of Proceedings* 6:14-17 (ECF No. 90). When she allocated, Ms. Hodges stated to the Court:

> Your Honor, I stand before you today fully accepting responsibility for my actions and what I've done. I'm extremely remorseful for what I've caused to the victim and their business. . . . [A]nd I accept full responsibility for what has happened.

*Id.* 44:13-21. But in her reply letter dated January 21, 2026, Ms. Hodges wrote:

> Finally, it was acknowledged in court that I was not the individual who committed the fraudulent acts. That person is deceased. I accepted responsibility for negligence—not intentional fraud.

*Letter* at 1.

Ms. Hodges's statement gives the Court considerable pause. Her statement is false. Ms. Hodges admitted the truth of the prosecution version in this case that stated:

> From about November 27, 2019, and continuing until about October 12, 2021, Alexis Hodges knowingly and willfully devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

*Prosecution Version* at 1. For Ms. Hodges to attempt now to deflect responsibility for her criminal acts and blame someone who is dead worries the Court that she has not yet come to terms with her criminal acts and casts doubt on her willingness and ability to be rehabilitated from a crime she no doubt committed but now denies.

V. **CONCLUSION**

Accordingly, the Court DISMISSES without prejudice Alexis Hodges's Motion to Modify Conditions of Supervised Release (ECF No. 99).

13

SO ORDERED.

                                           <u>/s/ John A. Woodcock, Jr.</u>
                                           JOHN A. WOODCOCK, JR.
                                           UNITED STATES DISTRICT JUDGE

Dated this 2nd day of February, 2026